UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,

                  Plaintiff,

v.

Real Property located at 5294 BANDY
ROAD, PRIEST RIVER, BONNER
COUNTY, IDAHO, and all fixtures,
improvements, and appurtenances
thereon (Owner of Record: Nathan A.
Schumacher),

                  Defendant,

NATHAN SCHUMACHER and DANE
SCHUMACHER,

                  Claimants.

Case No. 2:12-cv-00296-CWD

**MEMORANDUM DECISION AND
ORDER**

This is a civil asset forfeiture action under 21 U.S.C. § 881 and 18 U.S.C. § 983.

The Government of the United States of America brings this action *in rem* against real

property located at 5295 Bandy Road in Priest River, Idaho, and all fixtures,

improvements, and appurtenances to it (the Property). Dane Schumacher resided at the

Property from 2005 until 2012, when he was arrested on, and later pled guilty to, state

felony drug charges related to an indoor marijuana growing operation at the Property.

Dane's son, Nathan Schumacher, has held legal title to the Property since 2006. Both Dane and Nathan Schumacher claim interests in the Property, and Nathan seeks dismissal of the forfeiture action.[1]

Before the Court are the parties' cross-motions for summary judgment. In a motion filed on March 10, 2014, (Dkt. 19), Nathan asserts two grounds for dismissal of the United States' forfeiture action against the Property. First, he argues his ownership interest in the Property is not forfeitable because he is an "innocent owner" as defined in 18 U.S.C. § 983(d). In the alternative, he claims forfeiture of the Property would be in violation of the Excessive Fines Clause of the Eighth Amendment to the Constitution of the United States.

The Government filed its Motion to Strike the Claim of Nathan Schumacher and for Summary Judgment, (Dkt. 28), on August 4, 2014, pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules). Relying on Nathan's statement of undisputed facts (Dkt. 19-2), the Government claims Nathan lacks standing to challenge the forfeiture and does not meet the statutory definition of an "innocent owner" because, despite holding legal title to the Property, Nathan did not exercise dominion and control over it. Additionally, the Government requests summary judgment of forfeiture, arguing Nathan's Eighth Amendment analysis is premature until the forfeiture judgment issues.

---

[1] For clarity, the Court will refer to the Schumachers by their first names or will use "son" to refer to Nathan and "father" to refer to Dane.

A hearing on these matters was held on October 22, 2014, at which time the Court took all pending motions under advisement. After carefully considering the record, the arguments of the parties, and applicable law, the Court will grant in part and deny in part both motions.

## BACKGROUND

### 1.    Undisputed facts

In July of 2005, Marsha Hester conveyed the Property by warranty deed to Dane, following Dane's purchase of the Property for approximately $65,000. At the time of purchase, the Property was undeveloped, but Dane later erected a dwelling on it.

In December of 2005, while the dwelling was still under construction, Dane suffered a heart attack and underwent triple-bypass surgery. After his heart surgery, Dane executed a quitclaim deed transferring the Property to his son, Nathan, on June 6, 2006. (N. Schumacher Stmnt. of Facts, Ex. A, Dkt. 19-3 at 2.) The quitclaim deed was recorded the same day. (*Id.*) According to the Schumachers, Dane conveyed the property to Nathan as an estate planning measure and in anticipation of further health problems. (D. Schumacher Aff. ¶ 9, Dkt. 19-3 at 5; N. Schumacher Aff. ¶ 3, Dkt. 19-3 at 10.) Dane continued to reside in the dwelling on the Property while Nathan continued to reside on his farm in Rathdrum, Idaho.

Nathan has paid all property taxes for the Property after execution of the 2006 quitclaim deed. (Tax Records, Dkt. 30-1 at 2-9.) Additionally, Nathan held and paid premiums on an insurance policy covering the Property, the correspondence for which is mailed to Nathan's residence in Rathdrum. Nathan also stored farm equipment on the

Property and paid for improvements, maintenance, and repairs to the Property. Dane, on the other hand, lived on the Property rent free, kept his vehicle and all his personal belongings on the Property, and paid for the utilities.

Dane at some point in time operated a marijuana growing operation concealed in two rooms beneath the living quarters in the dwelling on the Property. Dane kept the grow area locked at all times and possessed the only key. (D. Schumacher Aff. ¶ 12, Dkt. 19-3 at 6.) Although the parties dispute when Dane began growing marijuana at the Property, utility records indicate that power usage at the Property rose from 304 kilowatt hours per month (KWH/month) to 2,483 KWH/month in November of 2008 and remained above 2,000 KWH/month through June of 2012. (Wiseman Aff. ¶ 11, Dkt. 1-1 at 5.) This level of power usage is high for a single-occupant dwelling and is unusual in that it did not significantly vary with the seasons. (*Id.*)

In March of 2012, the Idaho State Police began investigating a suspected marijuana growing operation on the Property. On June 12, 2012, Idaho State Police detectives and officers from the Bonner County Sheriff's Office served a search warrant on Dane's residence at the Property. The search revealed an active indoor marijuana grow, consisting of 65 plants in various stages of growth, packing materials, scales, and various other drug paraphernalia. Dane was arrested by Idaho authorities and charged by information with one felony count of manufacturing marijuana and one felony count of possessing marijuana with intent to distribute in the First Judicial District of the State of Idaho, in and for the County of Bonner. In April of 2013, Dane plead guilty to both counts. In June of that year, Dane received a withheld judgment and a withheld sentence

pending successful completion of three years of supervised probation and payment of

$500 in restitution and $270 in fees and costs.

## 2. Procedural history

The Government initiated this lawsuit on June 12, 2012, by filing a Verified

Complaint *In Rem* against the Property, alleging the Property is subject to forfeiture

under 21 U.S.C. § 881(a)(6)—as proceeds traceable to a drug exchange—and under

§ 881(a)(7)—as property used in connection with a drug offense. (Dkt. 1.) Pursuant to 18

U.S.C. § 985(c), the United States posted a Notice of Forfeiture on the Property on July

26, 2012. (Dkt. 2.) On August 22, 2012, Nathan filed a Verified Statement of Interest,

claiming sole ownership of the Property by virtue of the June 6, 2006 quitclaim deed.

(Dkt. 3.) Dane received notice of this forfeiture action on August 22, 2012, and filed a

Verified Statement of Interest in the Property on September 5, 2012.

On September 25, 2012, the Schumachers moved to stay further proceedings,

pending resolution of the criminal charges against Dane. (Dkt 14.) In response, the

Government argued against a stay at least until it could serve and receive responses to

special interrogatories pertaining to ownership of the Property. The Court denied the

motion to stay in an Order dated January 11, 2013. Thereafter, acting under Supplemental

Rule G(6), the Government served special interrogatories and requests for production of

documents on Dane and Nathan. In April of 2013, the Schumachers served their

respective answers to the special interrogatories and produced certain documents to the

Government. (D. Schumacher Ans., Dkt. 19-3 at 13–21; N. Schumacher Ans., Dkt. 19-3

at 29–37.) The Government did not request additional discovery or seek clarification of any of the Schumachers' answers to the special interrogatories.

There was no apparent action in the case for almost one year. On March 7, 2014, the Court ordered the parties to participate in a judicially supervised settlement conference before the Honorable Richard Tallman. Nathan filed his motion for summary judgment three days later. (Dkt. 19.) Nathan's motion argues the case should be dismissed because Nathan is an "innocent owner" under 18 U.S.C. § 983(d) and because the forfeiture would be constitutionally excessive, but it does not challenge the Property's forfeitability under §§ 881(a)(6) or (7). Thereafter, on March 24, the Government withdrew from the settlement conference, explaining that it would be more appropriate to respond to Nathan's motion for summary judgment. (Dkt. 20.) The Government filed a response on April 24, claiming disputed issues of fact preclude summary judgment in favor of Nathan. (Dkt. 24.) Nathan replied on May 12, 2014, (Dkt. 25), and, one week later, the Court set the matter for an August 19 hearing.

On August 4, 2014, the Government requested that the hearing be continued, based on scheduling conflicts of both counsel, and also filed its Motion to Strike Claim of Nathan Schumacher and for Summary Judgment of Forfeiture. (Dkt. 28.) In its motion, the Government asserts Nathan lacks both standing and the dominion and control over the Property necessary to establish the innocent owner defense. The Court reset the hearing on Nathan's motion for October 22, 2014. Meanwhile, on August 28, 2014, Nathan filed a response in opposition to the United States' motion to strike, arguing the undisputed facts establish both his standing to contest the forfeiture and his dominion and

control over the Property. The Government did not file a reply brief. However, on October 17, 2014, the Government filed a "Pre-hearing Memorandum of Recent Cases [sic]," citing a single case—*United States v. 2007 Honda Civic EX Sedan*, 13-CV-483-JDP, 2014 WL 4211203 (W.D. Wis. Aug. 25, 2014).[2] As requested by the Government, (Dkt. 28-1 at 17), the Court heard argument on all pending motions during the October 22, 2014 hearing.

All parties have given their express written consent to proceed before the undersigned United States Magistrate Judge. (Dkt. 11.) Accordingly, the Court now addresses the parties' cross-motions for summary judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 "is silent as to how the court must analyze simultaneous cross-motions for summary judgment." *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001). However, the United States Court of Appeals for the Ninth Circuit has held that "when parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Id.* at 1136 (citing William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992)) (internal quotations and alterations omitted). Although the Court must decide each party's motion on an individual basis and

---

[2] This case holds that a claimant who does not qualify as an "owner" for purposes of the innocent owner defense cannot assert an Eighth Amendment challenge to a civil forfeiture. *2007 Honda Civic*, 2014 WL 4211203, at *5. However, cases decided in the Western District of Wisconsin are not binding on this Court. And, as the Court's analyses of the innocent owner and Eighth Amendment issues will show, *2007 Honda Civic* is not relevant to the Court's decisions on the instant motions.

in accord with Rule 56 standards, the decision must be made in light of the evidence offered to support both motions. *Id.* (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)). Therefore, when cross-motions for summary judgment are filed, each motion must be "considered with all reasonable inferences favoring the nonmoving party." *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

## DISCUSSION

When a claimant seeks dismissal of a civil forfeiture action, standing is the threshold question. Supp. R. G(8)(c)(ii)(A). The Court may consider the merits of the

claimant's motion to dismiss the forfeiture action only if the claimant has standing. *Id.*

For that reason, the Court will address both Article III and statutory standing before

addressing whether the property is forfeitable, whether Nathan qualifies as an innocent

owner, and whether the forfeiture should be considered excessive under the Eighth

Amendment.

**1.      Nathan has standing to challenge the forfeiture**

      **A.      *Article III Standing***

To have Article III standing to challenge an *in rem* civil forfeiture, a claimant must

establish an injury in fact, a causal connection between the injury and the conduct

complained of, and that it is likely the injury will be redressed by a favorable decision.

*United States v. $133,420 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012). At the

summary judgment stage, a civil forfeiture claimant can meet this burden by producing

"some evidence of ownership." *Id*. at 638. But the burden is "not a heavy one; the

claimant need demonstrate only a colorable interest in the property, for example, by

showing actual possession, control, title, or financial stake." *United States v. 5208 Los*

*Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004); *see also United States v. One*

*Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003) (finding "bare legal title"

sufficient to establish Article III standing). In this case, Idaho law determines whether

Nathan has an ownership interest in the Property. *5208 Los Franciscos Way*, 385 F.3d at

1191; *see also United States v. Ranch Located in Young, Ariz.*, 50 F.3d 630, 632 (9th Cir.

1995) ("In drug forfeiture actions, ownership is determined by state law").

The Government cites *United States v. Nava* for the proposition that "possession of mere legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture." 404 F.3d 1119, 1130 n.6 (9th Cir. 2004). However, *Nava* addressed an *in personam* criminal forfeiture proceeding under 21 U.S.C. § 853. This case, by contrast, is an *in rem* proceeding governed by 18 U.S.C. § 983. Cases like this one involve "two separate inquiries [into ownership]: (1) whether a claimant has sufficient ownership interest in the defendant property to confer Article III standing and (2) whether the claimant is an 'innocent owner' under 18 U.S.C. § 983(d)." *5208 Los Franciscos Way*, 385 F.3d at 1191 n.3 (citing *One Lincoln Navigator*, 328 F.3d at 1014). Given this distinction and the principles outlined above, bare legal title is sufficient to establish a colorable interest in the defendant property for Article III purposes but may be insufficient for the purpose of establishing the innocent owner defense under 18 U.S.C. § 983(d).

Under Idaho law, "a quitclaim deed conveys whatever interest the grantors possess at the time of the conveyance[, including] legal title." *Luce v. Marble*, 127 P.3d 167, 173 (Idaho 2005). "Idaho law presumes that the holder of title to the property is the legal owner of that property." *Id*. Further, a recorded conveyance serves as constructive notice of its contents from the time of recordation. Idaho Code § 55-811.

Here, there is no dispute that Dane owned the Property in its entirety when he conveyed "all of [his] right, title, and interest" in the Property to Nathan by quitclaim deed on June 6, 2006. (N. Schumacher Stmnt. of Facts, Ex. A, Dkt. 19-3 at 2.) The Schumachers' uncontradicted testimony is that Dane quitclaimed the Property to Nathan

as an estate planning measure following Dane's heart attack in late 2005 and triple-bypass surgery in early 2006. (D. Schumacher Aff. ¶ 9, Dkt. 19-3 at 5; N. Schumacher Aff. ¶ 3, Dkt. 19-3 at 10.) The deed was recorded immediately, giving the Government constructive notice of Nathan's title to the Property. Moreover, the Government readily found notice of the transfer before filing this action. (Wiseman Aff. ¶ 8, Dkt. 1-1 at 4) ("A search of Bonner County Records showed that the property at 5294 Bandy Road is owned by Nathan Allen Schumacher."). These undisputed facts give rise to the presumption that Nathan is the owner of the Property. *See Luce*, 127 P.3d at 173.

Faced with Nathan's showing, the Government correctly notes that the quitclaim deed would be void *if* it was a fraudulent conveyance. *See* Idaho Code §§ 55-901 through 55-921 (Idaho Uniform Fraudulent Transfer Act); *see also 5208 Los Franciscos Way*, 385 F.3d 1187 (affirming summary judgment based on unopposed showing of fraudulent conveyance under the California Uniform Fraudulent Transfer Act). The existence of a fraudulent conveyance is a question of fact. Idaho Code § 55-908. And the party challenging the conveyance has the burden of proving the fraud. *Mohar v. McLelland Lumber Co.*, 501 P.2d 722, 727 (Idaho 1972).

Here, the Government does not acknowledge these basic principles, nor does it apply Idaho law to the record. Instead, it vaguely alludes to two liens on the Property—apparently related to medical services rendered to Dane in 2005 and 2006—and recites the facts of a case applying California law, *United States v. Beretta,* C 07-02930 SI, 2008 WL 4862509 (N.D. Cal. Nov. 11, 2008). (Dkt. 24 at 6-8.) Missing from this cursory argument is any discussion of specific triable facts in this record or the implications of

those facts in light of Idaho law. Moreover, the Government admitted in its summary judgment brief, and during oral argument, that Nathan holds "mere legal title." (Dkt. 28-1 at 12.)

As discussed above, the Ninth Circuit has held that title alone is sufficient to meet the undemanding test for Article III standing in a civil forfeiture action. *5208 Los Franciscos Way*, 385 F.3d at 1191. Nathan presented evidence that Dane conveyed the Property to him in 2006 by quitclaim deed. The Government's conclusory suggestion that the deed could be fraudulent is insufficient to raise a genuine dispute of material fact, for Nathan rebuts the suggestion with a specific application of Idaho law. (Dkt. 25 at 5–7.) Therefore, undisputed facts establish Nathan's Article III standing to challenge the forfeiture.

### B. *Statutory Standing*

To establish statutory standing in a civil forfeiture action, the claimant must comply with the procedural requirements of 18 U.S.C. § 983(a)(4) as well as those in the Supplemental Rules. *United States v. Various Coins*, No. 3:11-cv-387, 2013 WL 1183312, *5 (D. Or. Mar. 21, 2013), *subsequent determination*, 2014 WL 1309340 (D. Or. Mar. 31, 2014). The Government claims Nathan lacks statutory standing, but its argument conflates the concept of statutory standing with the "owner" element of Nathan's innocent owner defense under 18 U.S.C. § 983(d)(6). Under the modern statutory framework, these are distinct inquiries. *United States v. $133,420 in U.S. Currency*, No. CV-09-8096, 2010 WL 1433427, *4 (D.Ariz. Apr. 9, 2010) (rejecting argument that claimant must be an "owner" under 19 U.S.C. § 983(d)(6) to have statutory

standing), *aff'd*, 672 F.3d 629 (9th Cir. 2012). Thus, the Government's argument that Nathan is merely a nominee and not an "owner" goes to the merits of Nathan's innocent owner defense, not the threshold question of statutory standing. *See One Lincoln Navigator*, 328 F.3d at 1015. The Government does not challenge Nathan's compliance with the applicable claim procedures.

**2.      The Property is forfeitable under 21 U.S.C. § 881(a)(7)**

The Government has the burden of proving the Property is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). The Government must "establish that there was a substantial connection between the property and the offense" the Property facilitated or was used to commit. *Id*. § 983(c)(3). Here, the Government claims the Property is subject to forfeiture under 21 U.S.C. §§ 881(a)(6) and (7), which provide:

> (a) Subject property
> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
> * * *
> (6) All . . . things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . . in violation of this subchapter[, 21 U.S.C. §§ 801–904,] [and] all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter[, 21 U.S.C. §§ 801–904,].
>
> (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter[, 21 U.S.C. §§ 801–904,] punishable by more than one year's imprisonment.

Summary judgment on forfeitability is appropriate if there is no genuine dispute of material fact as to whether the Property constitutes proceeds of a controlled substance exchange or whether the Property was used commit a federal drug crime.

The Government presents no evidence to show the Property is forfeitable as proceeds of a controlled substance exchange under § 881(a)(6). Nor does Nathan challenge this theory of forfeiture in his motion for summary judgment. Given the parties' lack of attention to this theory, neither party is entitled to summary judgment on the issue.

But there is no dispute that the Property is subject to forfeiture under § 881(a)(7). The record establishes the Property was used to manufacture marijuana. Indeed, Dane Schumacher plead guilty to manufacturing marijuana with intent to deliver and possessing marijuana with intent to deliver, both felonies under Idaho Code § 37-2732(a)(1). (Sentencing Disposition for D. Schumacher, Dkt. 19-3 at 49-51.) Such conduct would, if charged under federal law, constitute a violation of 21 U.S.C. § 841 punishable by more than one year of imprisonment. And there is no dispute that the Property was substantially connected to Dane's criminal offenses. [3] Thus, the undisputed facts establish the Property is forfeitable under § 881(a)(7).

---

[3]     No federal criminal charges were brought against Dane or Nathan. Nathan notes this fact in his opposition to the Government's motion, (Dkt. 30 at 7 n.2), but does not argue the forfeiture is improper on this basis. Moreover, the Court is satisfied that it has subject matter jurisdiction over this action, considering the many cases where property involved in state-law offenses has been forfeited under federal law. *E.g.*, *United States v. 6380 Little Canyon Rd.*, 59 F.3d 974 (9th Cir. 1995) (addressing forfeiture of property used in connection with California drug crimes under 21 U.S.C. § 881(a)(7)), *abrogated on other grounds by United States v. Bajakajian*, 524 U.S. 321(1998).

**3.     Nathan is entitled to summary judgment on the "owner" element but not the "innocent" element of his innocent owner defense**

Once forfeitability is established, the burden shifts to the claimant to prove he is an "innocent owner" under 18 U.S.C. § 983(d). "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." *Id*. § 983(d)(1). This provision is part of the uniform innocent owner defense created by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). Pub. L. 106-185, § 2(a), 114 Stat. 202 (2000). The Ninth Circuit explained:

> With this [uniform innocent owner defense], Congress ensured that modern-day forfeiture differs from historical forfeiture, since the Supreme Court had earlier noted a "long and unbroken line of cases" which had previously held that, under certain historical forfeiture provisions, "an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use." *Bennis v. Michigan*, 516 U.S. 442, 446 . . . (1996). Under CAFRA, this type of forfeiture is no longer permitted.

*United States v. Ferro*, 681 F.3d 1105, 1112 (9th Cir. 2012). To successfully assert the defense, the claimant must prove by a preponderance of the evidence that he is both innocent and an owner under within the meaning of § 983(d). *Ferro*, 681 F.3d at 1109. The parties dispute both elements of the defense.

**A.     *Ownership***

As defined in the relevant portion of 18 U.S.C. § 983(d)(6), the term "owner":

(A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and

(B) does not include—

                                        ***

(iii) a nominee who exercises no dominion or control over the property.

The parties' dispute centers on § 983(d)(6)(B)(iii). The Government contends Nathan is merely a nominee, lacking the dominion and control necessary to qualify as an owner under the statute. Nathan argues he holds legal title to the Property and exercises dominion and control over the Property similar to that of a landlord.

The existence of an ownership interest for purposes of § 983(d)(6)(A) is a question of state law, but federal law determines whether a claimant is a "nominee who exercises no dominion and control" under § 983(d)(6)(B)(iii). *One Lincoln Navigator*, 328 F.3d at 1015. As the record owner of the Property, Nathan has an ownership interest in the Property. While the terms "nominee" and "dominion and control" are not defined in the statute, federal case law on the subject "tends to focus on the degree, quality, and genuineness of claimant's dominion and control over the defendant property." *Various Coins*, 2013 WL 1183312, *9. In these cases, the courts typically look beyond formal legal title to determine whether the claimant exercises "*some* dominion and control." *United States v. One 1990 Beechcraft Aircraft*, 619 F.3d 1275, 1278 (11th Cir. 2010) (emphasizing "a claimant must be more than a 'nominee with *no* dominion and control'"). This requirement "ensures that claimants at least have some actual connection to the property in question; they cannot be only bare title holders." *Id*. at 1279.

The Eleventh Circuit's decision in *1990 Beechcraft* is instructive. There, the Government brought a civil asset forfeiture action against an aircraft used to smuggle cocaine from Venezuela into the United States. The legal title holder, International

Aviation, LLC, asserted the innocent owner defense, arguing "it exercised some dominion and control when it signed the aircraft's ownership documents, held title to the aircraft, signed the aircraft's lease, reviewed the flight logs of the airplane, and supervised the repairs of the aircraft while it was leased." *Id.* The Eleventh Circuit noted that these tasks would have established dominion and control if performed by International Aviation. *Id*. But, because the district court found that all of the tasks were actually performed by the owner of the company leasing the plane—who held a 75% stake in International and happened to be the father of International's sole employee—the Eleventh Circuit affirmed the finding that International was merely a nominee. *Id.*

Here, by contrast, there is no genuine dispute that Nathan displayed indicia of dominion and control beyond holding legal title to the Property. He has paid taxes on the Property since 2006. He holds an insurance policy on the Property and paid for insurance, improvements, maintenance, and repairs at the Property. The Government acknowledges that Nathan stored farm equipment on the Property. These indicia demonstrate a more substantial connection to the Property than the paper ownership and supervisory tasks the Eleventh Circuit cited as sufficient evidence of "some dominion and control" in *1990 Beechcraft*. 619 F.3d at 1279. And, unlike that case, the Government presents no evidence that someone other than Nathan actually performed the tasks evidencing dominion and control.

Rather, the Government presents evidence that Dane had *more* dominion and control over the Property than Nathan. Specifically the Government notes:

(1) [Nathan] has never occupied the Property . . .; (2) [Dane] and not [Nathan] lives at the Property and has done so without interruption from the day the grow-operation building was built, exercising full physical possession and control; (3) [Nathan]'s minimal contacts with the Property are all with [Dane]'s permission; (4) [Nathan] lacks access to the Property without [Dane]'s permission; (5) [Nathan] admits that he did not control what occurred at the Property (or else he would have been criminally liable for it), (6) [Nathan] admits that his father locked off significant parts of the property, and he was thereby denied any form of dominion or control over the most critical part of it: the part which was being used in violation of federal drug laws; and (7) [Nathan] has stated he was unaware of the primary economic use of the property, which soley [sic] benefitted his father, i.e., the large marijuana grow operation that occupied much of the residence.

(Dkt. 28-1 at 13–14.)  Most of these points are not in dispute. With respect to the third and fourth points, however, the Government cites no evidence, aside from Dane's possession of the only key to the grow rooms, to substantiate its assertion that Nathan needed his father's permission access the Property. Dane's exclusive control of the grow rooms does not necessarily mean Nathan needed Dane's permission to access the rest of the Property. Therefore, the Court will not accept the Government's third and fourth assertions as undisputed facts.

As Nathan argues, the Government's showing is suggestive of an informal landlord-tenant relationship between son and father. Indeed, a lease operates to give the tenant rights to possession and physical control of the leasehold. *See generally Johnson v. K-Mart Corp.*, 882 P.2d 971 (Idaho 1994). It is not uncommon for a tenant to pay utilities on, store belongings at, and have the right to restrict third-party access to the leasehold. It is also not surprising that a son would allow his father to live on the son's property without the legal and financial formalities of a lease between strangers. Even if the

undisputed evidence is viewed in the light most favorable to the Government, it does not establish Nathan utterly lacked dominion and control over the Property.

The governing statute withholds the innocent owner defense only from "a nominee who exercises *no* dominion and control over the property." 18 U.S.C. § 983(d)(6)(B)(iii) (emphasis added). The Government contends Dane's continuous residence and illicit activities at the Property demonstrate that Nathan had no dominion and control over the Property—notwithstanding Nathan's payments for a variety of the ownership expenses. In support, the Government cites a string of cases and, without further discussion, asserts "[t]his case is fundamentally the same." (Dkt. 28-1 at 16.) It is not the same.

The only Ninth Circuit case in the Government's list is *United States v. Vacant Land Located at 10th Street and Challenger Way*, 15 F.3d 128 (9th Cir. 1993). Although this case predates the uniform innocent owner defense now codified at 18 U.S.C. § 983(d), it directly addresses the issue of nominal ownership. In *Challenger Way*, the claimant produced no evidence that he actually made payments, and the evidence showed he could not even access the vacant lot in question because a third party possessed the only keys. 15 F.3d at 130–31. Given this lack of evidence, the Ninth Circuit found "[n]ot a jot or tittle of dominion and control" and concluded the claimant was a strawman for the true owner. *Id.* at 130. Here, it is undisputed that Nathan actually made tax and other payments on the Property and had some right of access, as evidenced by his storage of farm equipment on the Property.

The Government's cited cases from outside the Ninth Circuit are also distinguishable. In each of the three cases, the timing of the transfer to the claimants was

suspect and the claimants did not pay any ownership expenses for the defendant

properties. *See United States v. 500 Delaware St.*, 113 F.3d 310, 311 (2d Cir. 1997)

(finding nominal ownership where the post-arrest transfer was admittedly intended "to

avoid forfeiture" and where grantor continued to make all payments and repairs on the

property); *United States v. 2930 Greenleaf St.*, 920 F. Supp. 639, 640–641 (E.D. Pa.

1996) (finding transfer conveyed no interest to claimant because it occurred after

Government initiated forfeiture proceedings and recorded a lis pendens); *United States v.

Certain Real Property Located at River Rd.*, 839 F. Supp. 1, 2–3 (D. Me. 1993) (finding a

sham transfer where drug trafficker transferred ownership after notice of criminal

investigation and trafficker continued to live, maintain, and pay all expenses on the

defendant property). Unlike these cases, the record before the Court establishes that Idaho

authorities began investigating Dane's drug trafficking activities in 2012—approximately

six years after Dane quitclaimed the Property to Nathan. In addition, the Government's

evidence supports the inference that Dane began growing marijuana on the Property years

after the transfer—in November of 2008, when the power usage spiked and thereafter

remained suspiciously high.[4] Moreover, the Government does not present evidence to

rebut the Schumacher's sworn statements that, following a heart attack and triple-bypass

---

[4]     Although the Government asserts Dane began growing marijuana on the Property before
he quitclaimed the Property to Nathan in June of 2006, it presents no evidence to support this
assertion. The only evidence of when the grow started appears in the affidavit of DEA Special
Agent Jon Wiseman, filed in support of the Government's Verified Complaint. Wiseman
discusses suspiciously high power usage at the Property, implying that Dane began growing
marijuana on the Property in November of 2008. (Wiseman Aff. ¶ 11, Dkt. 1-1 at 5.) Therefore,
the Court finds no genuine dispute as to whether Nathan's interest in the Property predates
Dane's marijuana grow.

surgery, Dane executed the 2006 quitclaim deed to avoid probate. Thus, Nathan's payment of expenses for the Property, as well as the timing of and stated reason for the transfer in 2006, underscore that this case is fundamentally different from those cited by the Government.

To preclude summary judgment for Nathan on the issue of ownership, the Government must show a genuine—as opposed to purported—dispute of material fact suggesting that Nathan has no dominion and control over the Property. *Anderson*, 477 U.S. at 247–48. As discussed above, the uncontroverted evidence establishes that Nathan not only holds legal title to the Property but also performed tasks indicative of true ownership. The plain terms of § 983(d)(6)(B)(iii) make clear that the innocent owner defense is unavailable if the claimant completely lacks dominion and control over the Property. On this record, the Court cannot conclude Nathan had no dominion and control over the Property. Rather, the undisputed facts establish that Nathan had sufficient dominion and control to qualify as an owner under the statute.

### B.    *Innocence*

The summary judgment record indicates Nathan became the Property's owner in June of 2006 and that Dane's marijuana cultivation began in November of 2008. Where, as here, the claimant's ownership interest predates the conduct giving rise to forfeiture, the claimant can establish his innocence in one of two ways. The claimant is innocent if a preponderance of the evidence demonstrates he either "(i) did not know of the conduct giving rise to the forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate

such use of the property." 18 U.S.C. § 983(d)(2)(A). "The innocent owner defense does not apply, however, where the owner was willfully blind" to the activity giving rise to forfeiture. *United States v. 3814 Nw. Thurman St.*, 164 F.3d 1191, 1196 (9th Cir. 1999), *superseded by statute on other grounds as stated in Ferro*, 681 F.3d at 1111–12.

Nathan's testimony is that he "in no way knew that the property was being used for a marijuana growing operation." (N. Schumacher Aff. ¶ 4, Dkt. 19-3.) On the other hand, the Government presents circumstantial evidence that Nathan was willfully blind to the illegal activity on the Property. The Government cites, for example, the Affidavit of Idaho State Police Detective Charles Greear, which notes the marijuana odor at the Property was so strong at the time of the June 12, 2012 raid that "it would be impossible for anyone not to notice." (Greear Aff. ¶ 2, Dkt. 24-1 at 3.) Greear also explains that video surveillance footage of the Property shows Nathan entering the dwelling on the Property and staying inside for at least 15 minutes. (*Id.*)

While these facts support the inference that Nathan knew about, or was willfully blind to, his father's illicit activities, there is more than a scintilla of evidence to suggest Dane effectively concealed the marijuana grow. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.") For instance, Dane explained that a visitor would have to enter the hidden grow rooms to know of their existence and that he kept the only key. (D. Schumacher Aff. ¶¶ 10-11, Dkt. 19-3 at 6.) Consistent with Dane's account, Dave Morgan, Dane's neighbor and a former law enforcement officer with experience investigating marijuana

growing operations, stated that he visited the Property three to five times per month since the summer of 2005 but never knew Dane was growing marijuana there. (Morgan Aff., Dkt. 19-3 at 54.) Further, Detective Greear reported that Dane would allow the grow rooms to "air out" if he expected visitors to the Property. (Greear Aff. ¶ 2, Dkt. 24-1 at 3.)

This record could support a reasonable jury finding either way. Given this conflicting evidence, the Court finds there are genuine issues of material fact bearing on Nathan's innocence. Thus, neither party is entitled to summary judgment on the innocence element of Nathan's innocent owner defense. Supplemental Rule G(9) authorizes, and Nathan has requested, a jury trial in this matter. Accordingly, the issue of innocence is for a jury to decide.

**4.      Nathan's Eighth Amendment challenge is premature**

In the alternative to his innocent owner defense, Nathan contends forfeiture of his interest in the Property would violate the Excessive Fines Clause of the Eighth Amendment.[5]  A "claimant" with standing to challenge a forfeiture may "petition the Court to determine whether the forfeiture was constitutionally excessive." 18 U.S.C. § 983(g)(1). This analysis requires a comparison of the "forfeiture to the gravity of the offense giving rise to the forfeiture." *Id.* § 983(g)(2). The claimant must prove the

---

[5]      The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

forfeiture is "grossly disproportional by a preponderance of the evidence at a hearing conducted by the court without a jury." *Id.* § 983(g)(3).

If the Court finds the claimant has met this burden, it must "reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution." *Id.* § 983(g)(4); *see also United States v. Bajakajian*, 524 U.S. 321, 331 n.6 (1998) (noting "a modern statutory forfeiture is a 'fine' for Eighth Amendment purposes if it constitutes a punishment even in part"). The Ninth Circuit has held that every non-contraband civil forfeiture proceeding under 18 U.S.C. § 983 is at least in part punitive and therefore subject to excessiveness review. *Ferro*, 681 F.3d 1105, 1114.

Supplemental Rule G(8)(e) allows a claimant to seek summary judgment on the Eighth Amendment issue in certain circumstances. Specifically, the claimant must plead the defense, and the parties must "have had the opportunity to conduct civil discovery on the defense." Supp. R. G(8)(e)(i)–(ii). Here, Nathan pleaded the defense, and the parties have had more than one year to conduct discovery. But, as the Government notes, courts often defer the excessive fines analysis until the case is resolved on the merits in the Government's favor. *See, e.g., Ferro*, 681 F.3d at 1109-10 (noting the district ordered forfeiture before considering excessiveness).

Nathan argues excessiveness should be considered the leading issue because this case involves an indivisible parcel of real property. In support, he cites the 2006 Advisory Committee Notes for Supplemental Rule G(8)(e), which explain "it may be convenient to resolve the issue [of excessiveness] by summary judgment before trial on the forfeiture

issues." This statement is somewhat persuasive, considering that Supplemental Rule G was adopted to "bring together the central procedures that govern civil forfeiture actions." Supp. R. G 2006 Advisory Committee Notes. Nevertheless, Nathan does not cite—and the Court has not found—a case in which the court decided the constitutional issue before the forfeiture issues.

Perhaps more significantly, accepting Nathan's argument would result in the Court deciding the constitutional question ahead of a jury's determination of the statutory innocent owner defense. "The Supreme Court has long held that courts should interpret statutes in a manner that avoids deciding substantial constitutional questions." *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1106 (9th Cir. 2001). The constitutional issue here is no doubt a substantial one. Indeed, the Ninth Circuit has held that the excessiveness analysis necessarily includes a constitutional dimension. *Ferro*, 681 F.3d at 1117 ("But even if the government is correct that the statutory inquiry for excessiveness under § 983(g)(3) is limited to consideration of the conduct giving rise to the forfeiture, it is here where we must break from the terms of the statute and proceed directly to the Eighth Amendment analysis."). That is because the Constitution requires consideration of the claimant's culpability even if § 983(g) only requires consideration of the conduct giving rise to the forfeiture. *Id.*

At this stage in the proceeding, the Court is without the benefit of the jury's findings on whether Nathan knew of, or was willfully blind to, his father's criminal activities on the Property. Those findings would directly relate to Nathan's culpability and are thus an essential prerequisite to any constitutional inquiry.

Because this case may be resolved on a statutory basis, the Court finds an Eighth Amendment analysis premature at this juncture. The jury's findings on the issue of Nathan's innocence may obviate the need for a constitutional analysis. And, if the constitutional analysis becomes necessary, the Court will have the benefit of the record developed at trial.

## CONCLUSION

Based on the foregoing, the Court finds that neither party is entitled to summary judgment on a dispositive issue. Although Nathan established standing to challenge the forfeiture and his ownership of the Property under 18 U.S.C. § 983(d)(6), there are genuine issues of material fact as to his innocence under § 983(d)(2)(A). This factual dispute, combined with the considerations discussed above, renders premature a decision on Nathan's Eighth Amendment defense. And, while the Government established the Property is forfeitable under 21 U.S.C. § 881(a)(7), it presented insufficient evidence to warrant summary judgment on forfeitability under § 881(a)(6). Therefore, this case will proceed to a jury trial pursuant to Nathan's request for the same.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)  Claimant Nathan Schumacher's Motion for Summary Judgment (Dkt. 19) is **GRANTED IN PART AND DENIED IN PART**.

2)  Plaintiff's Motion to Strike Claim of Nathan Schumacher and for Summary Judgment (Dkt. 28) is **GRANTED IN PART AND DENIED IN PART**.

3)  The Court will hold a Telephonic Status Conference on November 12, 2014, at 2 p.m. Mountain Time, at which time the parties should be prepared to discuss a trial date and related deadlines.

Dated: **October 31, 2014**

Honorable Candy W. Dale
United States Magistrate Judge